UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GERALD GORDON d/b/a INDIANA HONEY BEES,<br><br>      Plaintiff,<br><br>      v.<br><br>KENNETH ANDREW FINCH d/b/a FINCH APIARY, RAYMOND MCCOY, and RYAN CUTTS,<br><br>      Defendants. | CAUSE NO.: 2:21-CV-292-TLS-JEM |
| KENNETH ANDREW FINCH d/b/a FINCH APIARY, RYAN CUTTS, and RAYMOND MCCOY,<br><br>      Counter-Claimants,<br><br>      v.<br><br>GERALD GORDON d/b/a INDIANA HONEY BEES,<br><br>      Counter-Defendant. | |

**OPINION AND ORDER**

This matter is before the Court on the Defendants' Motion for Judgment on the Pleadings [ECF No. 28]. The Plaintiff, Gerald Gordon, filed a response [ECF No. 31], and the Defendants Kenneth Andrew Finch d/b/a Finch Apiary, Raymond McCoy, and Ryan Cutts replied [ECF No. 32]. For the reasons set forth below, the Court grants in part and denies in part the Motion.

**LEGAL STANDARD**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is governed by the same standard the Court uses when reviewing a Rule 12(b)(6) motion to dismiss

for failure to state a claim. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). "A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citing Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)). When reviewing a complaint attacked by a Rule 12(b)(6) motion, a court construes the complaint in the light most favorable to the non-moving party, accepts the factual allegations as true, and draws all inferences in the non-moving party's favor. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## FACTUAL BACKGROUND

The Plaintiff, Gerald Gordon, operates Indiana Honey Bees, an apiary and beekeeping supply business located in Lake Village, Indiana. Compl. ¶ 7, ECF No. 4. As part of his business, Gordon sells and breeds Italian hybrid queen bees and nucleus bee colonies, or "nucs," containing a queen. *Id.* In October 2020, Gordon agreed to purchase 800 nucs from Defendant Andrew Finch, with delivery in April 2021, for a total purchase price of $88,000, or $110 per nuc. *Id.* ¶ 8. Finch put the key terms of this agreement in an October 13, 2020 email to Gordon. *Id.*; *see* ECF No. 28-1. Gordon had bought bees from Finch in the two prior years, including 500 nucs in 2020. Compl. ¶ 9. Finch's 2020 delivery did not initially comply with applicable quality standards, but Finch promptly cured the defects in that order. *Id.*

On October 13, 2020, Finch stated that he brought on "another partner to ensure we have an adequate supply of excellent honey bees." *Id.* ¶ 10. Finch sourced nucs from Defendants Raymond McCoy and Ryan Cutts in connection with Gordon's 2021 order. *Id.* Finch later told Gordon that McCoy had issues with queen failure, which can gravely impact the viability of a bee colony. Finch represented that he visited McCoy and had taken care of those issues. *Id.* ¶ 11.

Based on this history and on Finch's representations, Gordon was comfortable placing a larger order for 2021 and with advancing a larger deposit than in previous years. *Id.* ¶ 12. Ultimately, Gordon paid Finch $55,000 toward the 2021 order prior to delivery. *Id.*

The parties agreed that Gordon and Finch would inspect the bees upon delivery in Indiana. *Id.* ¶ 13. Gordon's order arrived on April 29, 2021, and inspection began on April 30, 2021, when Finch arrived in Indiana. *Id.* McCoy and Cutts were also present for the April 30, 2021 inspection. *Id.*

Through inspection, Gordon found numerous defects in the 2021 order. *Id.* ¶ 14. Some nucs were dead on arrival. *Id.* Other defects included the following:

- Nucs associated with Cutts were under-resourced, as they had low bee populations and blank frames. *Id.* Some of the bees from Cutts were aggressive. *Id.* Upon further inspection, Gordon determined the aggressive bees lacked a queen. *Id.* When these defects were discovered, Cutts disappeared from Gordon's premises and did not return. *Id.*

- Nucs associated with McCoy had defects. *Id.* Some had no queen. *Id.* Some were overpopulated by drones and drone brood, an imbalance that is harmful to the reproductive sustainability of the colony and can result in its collapse. *Id.* Some frames did not have "ears," a vital part of the physical structure of a nuc. *Id.* Some were infested with invasive beetles. *Id.* When these defects were discovered, McCoy also disappeared and did not return. *Id.*

- Numerous nucs contained queens that were caged and had not been introduced into the colony, a potentially fatal defect, as hives may reject a new queen. *Id.* These nucs also lacked eggs and larva. *Id.* During inspection, Finch tried to improvise various solutions to the defects, including by swapping brood frames to conceal queenless hives and by adding queens that were apparently ordered in advance and shipped to Gordon's premises. *Id.* These attempted fixes and deceptions did not cure the defects, and instead further compromised the nucs that Gordon needed to deliver to local customers. *Id.*
- Other nucs, stashed by Finch in trees around Gordon's property, were queenless, contained virgin queens not yet capable of laying the eggs needed for a viable colony, or were infested with invasive moths. *Id.* Finch admitted that some of these were queenless or contained virgin queens. *Id.*
- Some nucs had brood disease. *Id.*

Like Cutts and McCoy, Finch left Gordon's premises before the inspection was complete and without resolving the defects in the delivered nucs. *Id.* ¶ 15. Gordon repeatedly attempted to communicate with Finch regarding the defects, but Finch never offered to deliver replacement nucs that satisfied quality standards or to cure the defects in the nucs he delivered. *Id.* ¶ 16.

Finch's defective nucs caused severe damage to Gordon's business. *Id.* ¶ 17. Gordon had nearly 800 orders, from hundreds of customers. *Id.* As a result of the defects, Gordon has been unable to fulfill orders and has refunded some customer payments. *Id.* Some nucs were too weak to timely deliver to customers. *Id.* Others were mislabeled as healthy colonies or appeared viable upon inspection but proved defective soon afterward due to latent defects. *Id.* In some cases, defects only became apparent after Gordon had delivered the nucs to customers, requiring Gordon to give customers viable nucs from his own hives in exchange for returned, defective nucs provided by the Defendants. *Id.*

Gordon has incurred significant expenses in attempt to triage the defects. *Id.* ¶ 18. These efforts have required Gordon to, among other things, hire an outside beekeeping expert, identify

4

and isolate nucs, deal with scores of empty nuc sections called "frames," and correct flaws in nuc construction. *Id.* Gordon has determined that more than half of the nucs delivered actually shipped from Florida, rather than Mississippi, as Gordon expected and as stated on the inspection form provided by Finch. *Id.* ¶ 19. This enabled Finch to deliver nucs to Gordon in Indiana that would not have passed inspection if the nucs had been inspected in their state of origin, as required. *Id.*

## ANALYSIS

The Court applies Indiana substantive law because the instant claims are brought under the court's diversity jurisdiction. *See Webber v. Butner*, 923 F.3d 479, 480–81 (7th Cir. 2019) ("This case is in federal court under diversity jurisdiction, *see* 28 U.S.C § 1332, so we apply Indiana substantive . . . law . . . .").

**A.     Standing**

To determine whether a party has standing under Article III, the Court "asks whether the complaint 'clearly allege[s] facts' demonstrating that [the party] has '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

The Defendants argue that Gordon does not have standing to bring any of his claims because he seeks "overtly speculative and ambiguous damages" and he has failed to allege that his damages exceed the amount he saved by withholding payment of the full price of the contract. Gordon responds that he has alleged concrete harm and that an exact figure is not required for damages allegations. The Court finds that Gordon's allegations are sufficient to establish standing.

Gordon alleges that "Finch's defective nucs caused severe damage to Gordon's business." Compl. ¶ 17. He has been unable to fulfill orders and has refunded some customer payments. He also had to give customers viable nucs from his own hives in exchange for

returned, defective nucs provided by the Defendants. He incurred significant expenses in his attempts to triage defects in nucs, including hiring an outside beekeeping expert, identifying and isolating nucs, dealing with scores of empty frames, and correcting flaws in nuc construction. Gordon alleges that these injuries are attributable to the Defendants' delivery of flawed nucs. Specifically, he alleges that nucs were under-resourced, aggressive, overpopulated by drones and drone brood, lacked ears, and were infested with invasive beetles. He alleges that certain nucs, which lacked eggs and larva, contained queens that were caged and had not been introduced into the colony. He alleges that some nucs lacked queens or contained virgin queens and that others had brood disease. A decision in Gordon's favor on his claims would compel the Defendants to compensate Gordon for the expenses he incurred as a result of these defects. These allegations are sufficient to establish standing under *Spokeo*.

The Defendants cite no caselaw for the proposition that Gordon must allege he lost more than his withheld payment. Further, evaluating Gordon's damages would require evidence on the expenses he incurred due to the alleged breach, how much he earned from his sales of the nucs, and how much he would have earned if the contract were not breached. Although Gordon withheld $33,000 from his contract payment to the Defendants, the parties have not yet produced evidence showing how much Gordon incurred in expenses. These are factual questions not properly before the Court at this stage of the proceedings. *See Servpro Indus., Inc. v. Schmidt*, 905 F. Supp. 475, 482 (N.D. Ill. 1995) (concluding that dismissing a damages claim on a motion to dismiss would be premature because "[t]he amount of damages that should be awarded is a question of fact for the factfinder" (citing *Arcor, Inc. v. Textron, Inc.*, 960 F.2d 710, 713 (7th Cir. 1992))). Although Gordon withheld payment on the contract, the allegations of his injuries support the possibility that he may have lost more than he withheld, which is sufficient at this stage of the proceedings. *Camasta*, 761 F.3d at 736 (explaining that to survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its

face"). The Court denies the Defendants' motion for judgment on the pleadings based on a lack of standing.

**B.      Breach of Contract (Count I)**

To allege a breach of contract claim, Gordon must allege three critical elements: there is a contract, it was breached, and Gordon suffered damages as a result of the breach. *Murat Temple Ass'n v. Live Nation Worldwide, Inc.*, 953 N.E.2d 1125, 1129 (Ind. Ct. App. 2011).

Finch only challenges the third requirement. He argues that Gordon failed to state a claim for breach of contract because he did not allege that he lost more than he saved. Finch contends that Gordon withheld $33,000 on the contract and does not allege how much he made from his sales of the nucs the Defendants provided. In other words, Finch argues that even though Gordon may have received some defective nucs, he may have nonetheless profited by withholding $33,000. Finch cites *Sheppard v. Stanich*, 749 N.E.2d 609, 611 (Ind. Ct. App. 2001), for the proposition that a non-breaching party is not entitled to be placed in a better position than he would have been if the contract had not been broken. Gordon responds that Indiana law does not require him to allege that he lost more than he saved, that the amounts of his savings and sales are evidentiary issues for later in the case, and that his allegations of damages are enough to state a claim.

Finch's argument here is the same as his argument challenging standing: Gordon failed to allege that he lost more than he saved. As the Court explained above, the argument fails because the amount of Gordon's losses is a question of fact not appropriate for determination at this stage of the proceedings. *See Servpro Indus., Inc.*, 905 F. Supp. at 482. The Court denies Finch's motion for judgment on the pleadings on Gordon's Count I for breach of contract.

**C.      Breach of Warranty (Count II)**

"A promise in a contract may take the form of a warranty," which is "an assurance by one party to a contract of the existence of a fact upon which the other party may rely." *Essex Grp., Inc. v. Nill*, 594 N.E.2d 503, 506 (Ind. Ct. App. 1992) (quoting *Shambaugh v. Lindsay*, 445

7

N.E.2d 124, 127 (Ind. Ct. App. 1983)). In the Complaint, Gordon alleges that Finch warranted the nucs would be of "excellent" quality but instead many were defective or worthless. Finch moves for judgment on Gordon's claim for breach of warranty because Finch's statement that the bees would be of "excellent" quality was merely "puffing," which cannot be the basis of a claim for breach of warranty.

Finch is correct that "statements of the seller's opinion, not made as a representation of fact, do not create an express warranty." *Martin Rispens & Son v. Hall Farms, Inc.*, 621 N.E.2d 1078, 1082 (Ind. 1993) ("The statement that a product 'is the best' is simply puffing which does not create an express warranty." (citation omitted)), *abrogated on other grounds by Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947 (Ind. 2005). Gordon responds that his claim should survive because Finch's representation of the bees as "excellent" may not have been Finch's opinion, but a representation of the quality grade of the bees. Gordon's Complaint, however, does not allege that "excellent" is a quality grade in the beekeeping industry. Rather, it is a typical example of puffery. *See id.* (concluding that a label stating the contained watermelon seeds were "top quality seeds" was a "classic example of puffery"); *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 333 (Ind. 2013) (concluding that a car dealer's description of a car as "Sporty Car at a Great Value Price" was mere puffery). Accordingly, the Court grants Finch's motion for judgment on the pleadings on Gordon's Count II as to Finch's assertion that the delivered bees would be of "excellent" quality. Count II remains pending as to Finch's assertions that he fixed McCoy's queen failure issues and would provide Gordon with a report representing that the nucs had passed inspection in Mississippi.

**D.    Fraud (Counts III–V, IX)**

The Defendants argue that Gordon has failed to state a claim for fraud under Federal Rule of Civil Procedure 12(b)(6). They allege that Gordon's claims of fraud fail to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b) and that representations of future acts, such as the Defendants' promise to deliver bees six months in the future, cannot form the basis of a

claim for fraud. In his response, Gordon argues that the Defendants cannot now challenge his Complaint under 12(b) because they have already filed an answer and that he has alleged with sufficient particularity his claims for fraud and conspiracy to commit fraud.

1.   *Timing of the 12(b)(6) Defense*

Federal Rule of Civil Procedure 12(h)(2) explicitly allows parties to assert the defense of failure to state a claim upon which relief can be granted in a motion for judgment on the pleadings. Fed. R. Civ. P. 12(h)(2); *see Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989) ("Under FRCP 12(c) defendants essentially raised a proper FRCP 12(b)(6) motion by challenging the sufficiency of the complaint as allowed under Rule 12(h)(2)." (citation omitted)); *United Airlines, Inc. v. United States*, No. 95 C 304, 1995 WL 437517, at *1–2 (N.D. Ill. July 21, 1995) (recognizing that "although it was too late for defendant to move to dismiss pursuant to Rule 12(b)(6), the timing was right for defendant to move for judgment on the pleadings and the issue [of failure to state a claim upon which relief can be granted] may be raised in such a motion"). Accordingly, the Defendants' 12(b)(6) defense is properly before the Court.

2.   *Actual Fraud (Count III), Conspiracy to Commit Fraud (Count IV), Constructive Fraud (Count V), and Indiana Crime Victims Relief Act (Count IX)*

In the Complaint, Gordon alleges that Finch made the following misrepresentations, which form the basis of his fraud claims:

> (a) Defendant Finch was capable of timely providing 800 nucs that were, at a minimum, viable and salable; (b) Defendant Finch had resolved the queen failure issues encountered by one of his suppliers, Defendant McCoy; and (c) the nucs delivered by Defendant Finch pursuant to the 2021 Order had been properly inspected in their state of origin, represented to be Mississippi.

Compl. ¶ 33. Finch argues these allegations lack the required specificity and are otherwise non-actionable representations about future acts.

Federal Rule of Civil Procedure 9(b) requires that when stating a claim for fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Seventh Circuit has explained that Rule 9(b)'s "reference to

'circumstances' . . . requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (citation and quotation marks omitted); *compare Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (affirming the dismissal of a conspiracy to commit fraud claim because the complaint failed to allege when the purported agreement to defraud the plaintiffs was made or who, within Goldman Sachs, arranged it), *with Hefferman v. Bass*, 467 F.3d 596, 601–02 (7th Cir. 2006) (finding the complaint satisfied Rule 9(b) because it alleged the misrepresentation was made by "St. Pierre," "some time in late August or early September," "after midnight," at a home in Chicago, and orally communicated by St. Pierre to the plaintiff). Gordon's fraud claims fail to meet these requirements.

According to the Complaint, Finch misrepresented that he was capable of timely providing 800 nucs that were, at a minimum, viable and salable. The Complaint does not allege when or where Finch made that statement, nor by what means he communicated it to Gordon.

Gordon contends that Finch's Exhibit 1, attached to the Motion, *see* ECF No. 28-1, includes the alleged misrepresentation. Exhibit 1 is an email from Finch to Gordon detailing the terms of their agreement. Gordon argues the following language from the email is the alleged misrepresentation regarding Finch's capabilities: "due to the need to bring in another partner to ensure we have an adequate supply of excellent honey bees and the increase[d] price of bee equipment I will need a deposit of 20% down of the grand total of $88,000." ECF No. 28-1. This language from the email would satisfy the specificity requirements of Rule 9(b), but it does not contain the alleged misrepresentation that Gordon says it does.

10

Instead of stating that Finch was capable of timely providing 800 viable and salable nucs, the language Gordon points to constitutes representations about what Finch will do in the future, which cannot form the basis of an action for fraud. *See Kopis v. Savage*, 498 N.E.2d 1266, 1272 (Ind. Ct. App. 1986) ("In Indiana, actionable fraud arises from false representation of past or existing facts, not from representations as to future action or future conduct. It cannot be based on broken promises, unfulfilled predictions, or statements of existing intent which are not executed." (citations omitted)); *Jones v. Oakland City Univ.*, 122 N.E.3d 911, 918 (Ind. Ct. App. 2019) ("[C]laims of actual fraud may not be predicated upon representations of future conduct." (citation and quotation marks omitted)). In the email, Finch states he "need[s] to *bring in* another partner to ensure we have an adequate supply of excellent honey bees." Finch's statement of his existing need implies he has not yet brought on the other partner nor ensured an adequate supply of excellent honey bees. Neither the Complaint nor the emailed terms allege a misrepresentation with the required specificity.

The Complaint also alleges that Finch misrepresented that he fixed McCoy's issues with queen failure. Again, the Complaint fails to allege the time, place, and manner of this misrepresentation. Gordon does not attempt to remedy these deficiencies in his response. Accordingly, the Court concludes that the first two misrepresentations supporting Gordon's claims for fraud have not been pled with sufficient specificity as required by Rule 9(b).

As a third basis for fraud, Gordon claims that Finch misrepresented that the nucs had been properly inspected in their state of origin, represented to be Mississippi. Gordon alleges that Finch provided an inspection form certifying the nucs as inspected in Mississippi but that Gordon later found more than half the nucs were shipped from Florida. However, the inspection

form, which Finch attaches to his Motion,[1] *see* ECF No. 28-2, shows that only 170 of 800 nucs were *inspected* in Mississippi. Gordon's allegation that more than half the nucs were shipped from Florida is thus consistent with the inspection form. This third basis for fraud may satisfy Rule 9(b)'s specificity requirements, but it is not a material misrepresentation of past or existing fact that would form the basis for a claim of actual fraud or constructive fraud. *See Rice v. Strunk*, 670 N.E.2d 1280, 1289 (Ind. 1996) (describing the first element of an actual fraud claim as a "material misrepresentation of past or existing facts by the party to be charged"); *Demming v. Underwood*, 943 N.E.2d 878, 892 (Ind. Ct. App. 2011) (describing the second element of constructive fraud as "violation of [a] duty by the making of deceptive material misrepresentations of past or existing facts"). The Court thus grants Finch's motion for judgment on the pleadings on Gordon's claims for actual fraud (Count III) and constructive fraud (Count V).[2]

Having granted Finch's motion on Gordon's claims for actual fraud and constructive fraud, the Court must also do so on Gordon's claim for conspiracy to commit fraud (Count IV). *See Kim v. Vill. at Eagle Creek Homeowner's Ass'n*, No. 49A02-1106-CT-479, 2011 WL 5924347, at *3 (Ind. Ct. App. Nov. 23, 2011) ("[I]n Indiana there is no civil cause of action for conspiracy; there is only a civil cause of action for damages resulting from conspiracy. Thus, in a cause of action for civil conspiracy to commit fraud, Appellants were also required to establish fraud . . . ." (citation omitted)). Further, the Court grants Finch's motion for judgment on the

---

[1] "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (citation omitted) (interpreting Federal Rule of Civil Procedure 10(c), which provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes").

[2] Gordon additionally contends that he has alleged in detail Finch's attempts to conceal known defects in the nucs he delivered. He points to his allegations that Finch tried to improvise solutions to defects while delivering the nucs. These allegations describe deceptive conduct, but they do not detail the time, place, or manner of any of the three misrepresentations Finch is alleged to have made.

pleadings on Gordon's claim for relief from fraud under the Indiana Crime Victims Relief Act, Ind. Code § 34-24-3-1 (Count IX) because he has failed to state a claim for fraud.

The Court grants Gordon's request, made in his response brief, for leave to amend his Complaint to address the deficiencies in his fraud claims that the Court has detailed in this section. *See Cable v. Corr. Med. Servs., Inc.*, No. 1:08-CV-1251, 2009 WL 196386, at *1 (S.D. Ind. Jan. 27, 2009) ("Motions under Rule 12(b)(6) and Rule 12 (c) often trigger an amendment, and even where the court grants such a motion, the court ordinarily must allow the plaintiff an opportunity to amend to cure the pleading defects. When a court grants a motion to dismiss under Rule 12(b)(6), it should ordinarily allow the plaintiff an opportunity to amend the complaint." (citation omitted)); *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 690 (7th Cir. 2004) (reversing the district court's denial of leave to amend "[b]ecause leave to amend should be freely given and only denied after a motion to dismiss where it appears to a certainty that the plaintiff cannot state a claim upon which relief can be granted" (quotation marks and citation omitted)).

E.    **Negligent Misrepresentation (Count VI)**

Acknowledging that the tort of negligent misrepresentation is recognized under Indiana law, the Indiana Supreme Court has cited the Restatement (Second) of Trots § 552(1), which provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 747 (Ind. 2010) (quoting Restatement (Second) of Torts § 552(1)). In *Integrity*, for example, the Indiana Supreme Court

13

allowed a negligent misrepresentation claim to proceed against a title company because the title company wrongly advised a mortgage lender that a property was unencumbered by any judgments. *Id.* at 744, 750.

Here, Gordon alleges:

> Defendant Finch supplied false information to Gordon for the guidance of Gordon in connection with the 2021 Order including, without limitation, that: (a) Defendant Finch was capable of timely providing 800 nucs that were, at a minimum, viable and salable; (b) Defendant Finch had resolved the queen failure issues encountered by Defendant McCoy; and (c) the nucs delivered pursuant to the 2021 Order had been properly inspected in their state of origin, represented to be Mississippi.

Compl. ¶ 54. Gordon further alleges that Finch failed to exercise reasonable care in providing such information, that Gordon justifiably relied on Finch's information, and that Finch is liable to him for the pecuniary losses he suffered as a result. *Id.* ¶¶ 56–58.

Finch argues that "[f]or the same reasons" Gordon failed to state a claim for fraud, his negligent misrepresentation claim must also fail. Contrary to Finch's argument, however, a negligent misrepresentation claim is not governed by the heightened pleading standard of Rule 9(b). *See Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) ("We therefore must examine the necessary elements of a negligent misrepresentation claim . . . . This claim is *not* governed by the heightened pleading standard of Rule 9(b)."). Moreover, Finch has not pointed to any Indiana case law suggesting that negligent misrepresentation claims cannot be based on representations about future conduct. Nonetheless, even though the reasons the Court granted judgment on Gordon's fraud claims are not applicable to Gordon's negligent misrepresentation claim, the Court must still determine whether Gordon's claim falls to Finch's additional argument that Gordon did not plead out-of-pocket losses.

In *Pearman v. Hale Abstract Co., Inc.*, the Indiana Court of Appeals explained that the measure of damages for negligent misrepresentation is "the difference between the value of what

14

[the plaintiff] has parted with and the value of what [the plaintiff] has received." 159 N.E.3d 597, 601–02 (Ind. Ct. App. 2020). This measure is called the "out-of-pocket rule." *Id.* Finch argues Gordon did not plead out-of-pocket losses or allege the difference between the value of what he parted with and the value of what he received. Finch is essentially rehashing the argument he made with regard to standing and breach of contract: Gordon did not allege he lost more than he saved by withholding payment on the contract. As the Court previously explained, the amount of damages Gordon may have suffered is a question of fact not properly determined at this stage of the proceedings. *See Servpro Indus.*, 905 F. Supp. at 482 (concluding that dismissing a damages claim on a motion to dismiss would be premature because "[t]he amount of damages that should be awarded is a question of fact for the factfinder" (citing *Arcor, Inc.*, 960 F.2d at 713)). For now, Gordon's allegations of losses incurred as a result of his reliance on Finch's representations are enough to state a claim for negligent misrepresentation. The Court therefore denies Finch's motion as to Gordon's claim for negligent misrepresentation (Count VI).

### F. Violation of and Conspiracy to Violate the Indiana Deceptive Consumer Sales Act (Counts VII, VIII)

Indiana's Deceptive Consumer Sales Act (IDCSA), Ind. Code § 24-5-0.5, prohibits suppliers from committing any "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." Ind. Code § 24-5-0.5-3. The IDCSA permits a person who "rel[ies] upon an uncured or incurable deceptive act" to "bring an action for the damages actually suffered as a consumer as a result of the deceptive act." Ind. Code § 25-5-0.5-4. Gordon alleges that Finch committed multiple "deceptive acts" that entitle him to damages under the IDCSA. Finch moves for judgment on the pleadings on Gordon's IDCSA claims on the grounds that his sale of nucs to Gordon was not a "consumer transaction."

Under the IDCSA, a "consumer transaction" is defined as being "for purposes that are primarily personal, familial, charitable, agricultural, or household." Ind. Code 24-5-0.5-2(a)(1).

15

Absent from this definition are transactions for commercial purposes. Gordon alleges that, "[a]s part of his business, [he] sells and breeds Indiana-bred Italian hybrid queen bees and nucleus bee colonies, or 'nucs,' containing a queen. [He] sells queens and nucs to numerous customers each year." Compl. ¶ 7. The Complaint also states that "Gordon was counting on 800 quality nucs because he had nearly 800 orders from hundreds of customers." Compl. ¶ 17. Gordon's purposes in purchasing nucs from Finch were commercial, placing the transaction outside the scope of the IDCSA. *See McLeskey v. Morris Invest*, No. 1:18-CV-2797, 2020 WL 3315996, at *6 (S.D. Ind. June 18, 2020) ("Typically, an individual who acts with a commercial motive is not a consumer. A consumer is '[s]omeone who buys goods or services for personal, family, or household use, with no intention of resale; a natural person who uses products for personal rather than business purposes.'" (quoting Black's Law Dictionary (11th ed. 2019))); *cf. IUE-CWA Local 901 v. Spark Energy, LLC*, 440 F. Supp. 3d 969, 975–76 (N.D. Ind. 2020) (declining to dismiss an IDCSA claim on grounds that the sale of natural gas to the plaintiff did not involve a consumer transaction because "Plaintiff did not sell the natural gas to other consumers" but "[r]ather . . . was using the natural gas as a source of energy like any other consumer would"). The Court therefore grants Finch's motion for judgment on the pleadings as to Gordon's claims brought under the IDCSA (Counts VII, VIII).

## CONCLUSION

For the reasons stated above, the Court hereby GRANTS in part and DENIES in part the Defendants' Motion for Judgment on the Pleadings [ECF No. 28], granting the Motion as to Gordon's claims for breach of warranty regarding Finch's statement that the nucs would be of "excellent" quality (Count II), actual fraud (Count III), conspiracy to commit fraud (Count IV), constructive fraud (Count V), violation of the Indiana Deceptive Consumer Sales Act (Count VII), conspiracy to violate the Indiana Deceptive Consumer Sales Act (Count VIII), and for relief under the Indiana Crime Victims Relief Act (Count IX), and denying the Motion as to Gordon's claims for breach of contract (Count I), breach of warranty regarding Finch's

inspection report and statement that he fixed McCoy's queen failure issues (Count II), and negligent misrepresentation (Count VI). Accordingly, Counts II (based on "excellent quality" representation), III, IV, V, VII, VIII, and IX are DISMISSED without prejudice, resulting in the dismissal of Defendants Raymond McCoy and Ryan Cutts. The Complaint remains pending as to Counts I, II (remaining representations), and VI against Defendant Kenneth Andrew Finch d/b/a Finch Apiary.

The Court grants Gordon up to and including May 31, 2023, to file a motion for leave to amend his Complaint as described above.

SO ORDERED on May 17, 2023.

    s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT